## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DANIEL R. SCOTT, B80603,     )
      )
              Plaintiff,     )
      )
vs.     )
      )     Case No. 25-cv-2077-DWD
WEXFORD HEALTH SOURCE,     )
DR. GORDON,     )
A. DESAI,     )
JANE DOES 1-5,     )
JOHN DOE 1,     )
      )
              Defendants.     )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Daniel Scott, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff filed a complaint and a supplemental complaint. Plaintiff alleges that the defendants have violated his rights by failing to provide treatment for his cervical spinal issues. Plaintiff's pleadings (Docs. 1, 12-1) are now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture,

the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

As a preliminary matter, Plaintiff filed his "supplemental complaint" (Doc. 12-1) within about a month of filing his original complaint, and he filed it before his pleadings were served on anyone.  Based on the Motion for Leave to Supplement (Doc. 12), he clearly wishes to replace the original complaint with the updated pleading (Doc. 12-1). Plaintiff was within his right to submit an amended pleading as a matter of course under Federal Rule of Civil Procedure 15(a)(1), so the Court will review his Amended Pleading (Doc. 12-1).

Plaintiff alleges that he first began to seek treatment at Pinckneyville for symptoms of cervical spine compression in October of 2023.  (Doc. 12-1 at 9).  Specifically, he alleges that during sick call in October of 2023, he told Jane Doe 1 (a nurse) that he was experiencing numbness in his left hand and pinky.  Jane Doe 1 merely informed him he would have to submit two more sick call requests about the issue before he could be seen. (Doc. 12-1 at 9).  Plaintiff alleges that on his third sick call visit, Jane Doe 2 then "moved the goal post" by informing him that he had to be seen for three consecutive sick call visits within a month before he could be referred to a doctor.  (Doc. 12-1 at 10).  Plaintiff complains that the requirement for an inmate to be seen at sick call three times before a doctor's visit is a Wexford policy and an intentional delay tactic.  (Doc. 12-1 at 9-10).

He alleges that the sick call policy created an obstacle course, during which he was forced to endure an eleven-month delay before he was sent off-site for an EMG test that

revealed a compressed ulnar nerve in his right arm.  He further alleges that an additional six months lapsed before he was sent off-site to an orthopedic specialist who found paralysis of his left index finger and muscle atrophy in his left hand that were too advanced for surgical or therapeutic intervention.  (Doc. 12-1 at 10).

Admist the delays, Plaintiff alleges that from May of 2024 onward he saw Defendants Desai, Dr. Gordon, and John Doe 1 (a nurse practitioner).  He claims he showed the providers visible muscle atrophy, but they failed to take reasonable steps to ensure treatment.  Plaintiff specifically alleges that he saw Desai beginning in June of 2024, and that he saw her three times between then and March of 2025.  (Doc. 12-1 at 12). He claims that he vividly described neck pain, whole-body tremors, and muscle atrophy in his hands and arms.  He alerted her that a previous MRI of his cervical spine revealed arthritis.  Despite his reported symptoms, Desai's sole course of action was to refer him for an EMG nerve test.  He claims Desai choose this option to cut costs, and it was not sufficient to assess his medical needs.  (Doc. 12-1 at 12).

Plaintiff further alleges that he saw Dr. Gordon over the course of three or four months.  (Doc. 12-1 at 12).  He says he saw Dr. Gordon on May 10, 2025, and described many symptoms, but all that Dr. Gordon did was recommend a third off-site EMG test. (Doc. 12-1 at 8).  Plaintiff saw Dr. Gordon again for a third time in July of 2025, and during the appointment he confronted Dr. Gordon about his suspicion that he was suffering from cervical spine nerve compression, which would only be detectable via an MRI. (Doc.  12-1 at 8).  Plaintiff alleges that Dr. Gordon conceded an MRI would be necessary, but stated he could not make a referral to any sort of specialist until he had been seeing

Plaintiff for at least nine months.  Dr. Gordon indicated that this limitation existed because Wexford admonished Pinckneyville medical staff for sending patients to off-site specialists too quickly.  (Doc. 12-1 at 8-9).

By way of background, Plaintiff also alleges that  from October of 2023-May 2024, and from June 2024-October 2024, Jane Does 1-5 were responsible for collecting sick call slips in his housing unit and they regularly disregarded his sick call requests.  (Doc. 12-1 at 11).  He claims that their failure to regularly run sick call is indicative of the larger healthcare failures at Pinckneyville.

Near the end of the complaint, Plaintiff alleges that in July of 2025 Centurion Health took over for Wexford Health Source.  (Doc. 12-1 at 13).  He claims that although a nurse practitioner referred him to an off-site neurologist for an MRI, four months lapsed without the visit taking place.  (Doc. 12-1 at 13).  Plaintiff seeks monetary damages.  (*Id.*).

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Claim 1:**  **Eighth Amendment deliberate indifference claim against Defendants Jane Doe 1 and Jane Doe 2 for their insistence that Plaintiff adhere to the sick call visit policy;**
>
> **Claim 2:**  **Eighth Amendment deliberate indifference claim against Desai, Dr. Gordon, and John Doe 1 for their alleged role in Plaintiff's care from March of 2024-July of 2025;**
>
> **Claim 3:**  ***Monell* claim against Wexford for implementing the three sick call policy and directing medical staff to delay specialist appointments to cut costs.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned

in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissal

Plaintiff faults Jane Does 1-5 for their alleged mishandling of the sick call slips that he alleges he submitted from October 2023 onward.  A blanket assertion that one or more defendants caused a harm is not sufficient to state a claim under § 1983.  *See e.g.*, *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (the assertion that "one or more of the Defendants" engaged in harmful conduct does not adequately connect specific defendants to illegal acts).  To the extent that Plaintiff has more specific allegations about encounters with Jane Does 1 and 2, those will be analyzed in association with Claim 1, but the umbrella assertion against Jane Does 1-5 is insufficient to proceed and Jane Does 3-5 will be dismissed as this is the only mention of them in the factual allegations.

## Analysis

### Claim 1

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component.  *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010).  A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard).  *Id.*  To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to

inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff alleges that he presented to Jane Doe 1 and Jane Doe 2 during the prison's sick call process. He claims that when he saw Jane Doe 1 he reported left hand and pinky numbness, signs of ulnar nerve compression. He does not indicate if Jane Doe 1 offered any treatment options, and instead just alleges that she told him he would have to complete two more sick call visits before he could be referred to a doctor. As for Jane Doe 2, Plaintiff alleges that when he eventually saw her for a third sick call visit, she moved the benchmark, alleging that he had to have three visits in a single month. He does not indicate she offered any care. Though an inmate is not entitled to demand specific care, his allegations suggest that Jane Doe 1 and Jane Doe 2 offered no care at all and simply insisted he keep following a repetitive process that was not affording him any relief. At this early stage of review, the Court will allow Plaintiff to proceed against Jane Doe 1 and Jane Doe 2 on the premise that they offered no care and simply instructed Plaintiff to proceed with what they knew would be a slow and drawn out process to seek a doctor's referral. Plaintiff also alleges Jane Does 1 and 2 participated in disregarding countless sick call slips, which further supports the notion that they played a role in his delayed access to care despite knowing that he sought care frequently.

**Claim 2**

Plaintiff alleges that he saw Defendants Desai and Dr. Gordon on multiple occasions from June of 2024-July of 2025, and he discussed deteriorating symptoms with them, but they offered nothing other than an EMG. He alleges Dr. Gordon even admitted an MRI would be appropriate but stated he could not yet make the referral due to Wexford's instructions to delay specialist visits. Plaintiff may proceed against Desai and Gordon.

By contrast, Plaintiff also alleges that sometime in or after March of 2024 he saw John Doe 1, a nurse practitioner. Plaintiff does not provide any greater specificity about when he saw John Doe 1, what he told John Doe 1 or showed him about his symptoms, or how John Doe 1 responded. As such, the allegations against John Doe 1 are insufficient to plausibly establish his personal responsibility for the harms Plaintiff alleges. John Doe 1 will be dismissed without prejudice for failure to plead a sufficient claim.

**Claim 3**

Plaintiff alleges that he was harmed by Wexford's policy requiring inmates to visit sick call three times before they could be seen by a doctor. He additionally alleges that providers would not send him out to a specialist in an effort to cut costs at Wexford's behest. These allegations are sufficient to proceed under *Monell* on the theory that Wexford's direct policy regarding sick call, or their policy, custom, or practice concerning specialist visits or testing caused Plaintiff harm by delaying his access to timely care. Plaintiff further alleges that when he eventually saw an orthopedic specialist, he was told that his left ring finger and left hand had suffered permanent deformities or atrophy that

could not be repaired via surgery or therapy.  These allegations are sufficient to proceed at this preliminary juncture.

By contrast, to the extent that Plaintiff complains of recent conduct by Centurion, he has not pled a sufficient claim because Centurion is not listed as a party in the case caption, and he does not seek any relief specific to Centurion.

### Disposition

**IT IS HEREBY ORDERED THAT Claim 1**  survives against Jane Doe 1 and 2, **Claim 2** survives against Desai and Dr. Gordon, and **Claim 3** survives against Wexford Health Source.  By contrast, **Claim 2** is insufficient to proceed against John Doe 1.  Plaintiff has also failed to state a claim against Jane Does 3-5.   The Clerk of Court shall **TERMINATE** Defendants John Doe 1, and Jane Does 3-5.

The Clerk of Court shall **ADD** the Warden of Pinckneyville in official capacity only to help identify Jane Does 1 and 2.  Plaintiff has already provided a physical description of Jane Does 1 and 2 in his complaint (Doc. 12-1 at 3).  **Once the Warden has entered an appearance, next steps will be set to identify John Doe.**

The Clerk of Court is **DIRECTED** to prepare for Defendants Desai, Dr. Gordon, and Warden of Pinckneyville (official capacity for Jane Doe identification): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 12-1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were

sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion to for Leave to Supplement (Doc. 12) is **GRANTED** and the Court reviewed his Amended Pleading (Doc. 12-1).

**IT IS SO ORDERED.**

Dated: January 28, 2026                    /s/ *David W. Dugan*
                                           _____
                                           DAVID W. DUGAN
                                           United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.